UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

THE ESTATE OF LUIS E. ANDUJAR
*by and through its
Administrators Ad
Prosequendum*, Michelle
Kincaide and Teresa E.
Vasquez
                    *Plaintiff*,

                v.

COUNTY OF CUMBERLAND;
RICHARD SMITH, *WARDEN (NOW
FORMER WARDEN)*; and CHARLES
WARREN, *DEPUTY WARDEN (NOW
FORMER DEPUTY WARDEN),
individually, jointly,
severally, and/or in the
alternative*

                    *Defendants*.

No. 1:22-cv-06372(NLH-AMD)
OPINION

---

**APPEARANCES**:

Arthur J. Murray, Esq.
Stuart J. Alterman, Esq.
Alterman & Associates, LLC
8 South Maple Avenue
Marlton, NJ 08053

        *Attorneys for Plaintiff*

A. Michael Barker, Esq.
Barker, Gelfand & James
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

        *Attorney for Defendants*

<u>**HILLMAN**</u>, District Judge

The instant matter is being brought by the estate of a deceased prison guard, claiming various federal and state violations for allegedly denying a request for the decedent to leave work early when he was not feeling well. Currently pending before the court are Defendants' Motion to Dismiss (ECF No. 10) and Motion for Sanctions (ECF No. 16).

For the reasons that follow, Defendants' Motion to Dismiss will be granted and their Motion for Sanctions denied.

**BACKGROUND**[1]

A global pandemic involving the Coronavirus ("Covid-19") began in China in December of 2019. (Compl. ¶ 7.) The first known case of Covid-19 was reported in the United States on January 21, 2020. (Compl. ¶ 8.) Under the leadership of Defendant Warden Richard Smith (now resigned) and Defendant Deputy Warden Charles Warren (now resigned), the Cumberland County Correctional Institution ("Cumberland County Jail") was on explicit notice as of January 21, 2020 that the Covid-19 pandemic was a threat to the United States and could directly or indirectly impact certain vulnerable communities such as jails,

---

[1] This recitation of facts is taken from Plaintiff's complaint. As set forth more fully below, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the Complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005).

2

their inmate populations, employees, officers, agents, and servants.  (Compl. ¶ 9.)

Until his death on January 22, 2021, Luis Andujar was a resident of the State of New Jersey and a former member of PBA Local 231, which was and is the Collective Bargaining Unit for rank-and-file correctional police officers employed by Defendant County of Cumberland. (Compl. ¶ 3.)  Plaintiff alleges that in the hours immediately preceding Andujar's death on January 22, 2021, he was feeling ill and showing symptoms of Covid-19 while on duty at Cumberland County Jail.[2]  (Compl. ¶ 13.)  He made his symptoms known to multiple supervisory officers within the jail, including Defendants Smith and Warren.  (Compl. ¶ 14.)

All supervisory officers, including Defendants Smith and Warren, ignored Andujar's clearly visible signs of illness. (Compl. ¶ 15.)  Andujar was repeatedly denied immediate medical attention and the ability to use collectively bargained-for sick leave time to end his shift early and seek medical attention on his own.  (Compl. ¶ 16.)  On January 22, 2021, Andujar promptly and repeatedly brought his concerns to Defendants Smith and Warren (by and through his other supervisors) about his health and its interplay with policies, procedures, rules, regulations, and other information concerning the operation of the Cumberland

---

[2]  As discussed below in conjunction with their Motion for Sanctions, Defendants contest Plaintiff's timeline of events.

County Jail in light of the global pandemic.  (Compl. ¶ 17.)
Upon doing so, Andujar was implicitly and explicitly discouraged
from raising the issues to which he brought attention concerning
his health and safety and its potential impact on his fellow
employees, as well as inmates of the Cumberland County Jail.
(Compl. ¶ 18.)

In light of the foregoing, Plaintiff alleges that despite
having actual notice, Defendants Smith and Warren failed to
develop timely and effective policies and procedures to combat
the threat of the pandemic, failed to order the equipment
necessary to adequately protect the employees of Defendant
County of Cumberland, failed to communicate effectively with the
employees of County of Cumberland, including Andujar, and
allowed certain policies and procedures to stay in place that
actually made employees of County of Cumberland, including but
not limited to Andujar, not only less safe, but vulnerable to
Covid-19. (Compl. ¶ 10.)

Because of the global pandemic, PBA Local 231, on behalf of
its members, including Andujar, promptly and repeatedly brought
their concerns about policies, procedures, rules, regulations,
and other information concerning the operation of the Cumberland
County Jail to the attention of Defendants Smith and Warren.
(Compl. ¶ 11.)  The concerns of PBA LOCAL 231, included, but
were not limited to: (1) issuing a press release on March 27,

4

2020 that read in part that "The Cumberland County Freeholders and Jail Administration have done nothing to protect the Cumberland County Correctional Police Officers from Covid 19" and "The Jail Administration has not included the PBA in any discussions about dealing with the Covid 19 crisis"; (2) filing an Order to Show Cause with the Public Employment Relations Commission on March 30, 2020 concerning a Memorandum issued by then Defendant Smith through Captain Michael Palau on September 25, 2019 that limited the amount of fresh air to which corrections officers were entitled during their 12- or 16-hour work shifts, which said limitation took on a heightened significance upon the onset of the Pandemic; (3) filing a grievance that members of PBA Local 231 were being forced to use their own banked vacation, sick and administrative time when being forced to quarantine by order of physicians or supervisors due to possible exposure to Covid-19 on the job, leading to the depletion of accumulated banks of vacation, sick, and administrative time, thereby exposing the officer to discipline for abuse of vacation, sick, and administrative leave policies upon complete depletion; (4) by being exposed to potential discipline for abuse of vacation time, sick time, and administrative time, members of PBA Local 231 were without banked time to use at their convenience to tend to their families during this global pandemic; (5) lobbying for Hazard

5

Pay via Letter of Counsel dated April 28, 2020 and lobbying for
increased transparency in reporting results of Covid-19 testing
for inmates and employees via Letter of Counsel dated May 1,
2020; (7) itemizing nine separate concerns in a letter to
outside labor counsel for Cumberland County dated May 26, 2020
from counsel for PBA Local 231 and sending a plethora of Covid-
19 related emails; (8) letters from PBA Local 231 President
Victor Bermudez to Administration for Cumberland County,
including, but not limited to March 21, 2020, March 28, 2020,
April 2, 2020, April 10, 2020, April 29, 2020, May 12, 2020, and
May 22, 2020; (9) issuing repeated Covid-19 related OPRA
requests by and through PBA Local 231 President Victor Bermudez
and/or counsel for PBA Local 231 and repeatedly requesting, if
not demanding, testing and contact tracing of officers, inmates,
and employees.  (Compl. ¶ 12.)

As a result of the foregoing, Andujar's estate now claims
Defendants denied him various State and federal constitutional
and civil rights.  Additionally, Plaintiff asserts a disability
discrimination claim under New Jersey's Law Against
Discrimination, as well as common law claims for the Tort of
Outrage, the Tort of Gross Insult, Wrongful Death, and Survival.

Defendants have filed the instant Motion to Dismiss, in
which they assert Plaintiff has failed to state a claim because
the Complaint is devoid of any allegation that Andujar in fact

6

had Covid-19, ever tested positive for Covid-19, or that Covid-19 was the cause of death.  (ECF No. 10-3 at 1.)  Defendants further claim Plaintiff's Complaint contains no facts to plausibly demonstrate that Andujar's death was caused by their Covid-19 policies.  Although Plaintiff opposes Defendants' Motion, he does not dispute Defendants' statements regarding Covid-19 or Defendants' policies being the actual cause of Andujar's death.  (ECF No. 15.)

## DISCUSSION

### I.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### II.  Standards of Review

#### A. Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the Complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A pleading is sufficient if it contains "a short and plain statement of the

7

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).

To determine the sufficiency of a Complaint, a court must take three steps:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)) (cleaned up).

In reviewing a Rule 12(b)(6) motion, a court must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). "A motion to dismiss should

be granted if the plaintiff is unable to plead 'enough facts to
state a claim to relief that is plausible on its face.'"
<u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

### B. Motion for Sanctions

The Federal Rules of Civil Procedure provide:

> **(b) Representations to the Court.** By presenting to the
> court a pleading, written motion, or other paper —
> whether by signing, filing, submitting, or later
> advocating it — an attorney . . . certifies that to
> the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the
> circumstances:
>
> > (1)   it is not being presented for any improper
> > purpose, such as to harass, cause
> > unnecessary delay, or needlessly increase
> > the cost of litigation;
> >
> > (2)   the claims, defenses, and other legal
> > contentions are warranted by existing law or
> > by a nonfrivolous argument for extending,
> > modifying, or reversing existing law or for
> > establishing new law;
> >
> > (3)   the factual contentions have evidentiary
> > support or, if specifically so identified,
> > will likely have evidentiary support after a
> > reasonable opportunity for further
> > investigation or discovery; and
> >
> > (4)   the denials of factual contentions are
> > warranted on the evidence or, if
> > specifically so identified, are reasonably
> > based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Fed. R. Civ. P. 11(c)(1) states in relevant part that
"[i]f, after notice and a reasonable opportunity to respond, the
court determines that Rule 11(b) has been violated, the court

may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Pursuant to Subsection (c) of said Rule,

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

Finally,

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).

As such, Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"  Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir.1986).

10

Sanctions awarded under Rule 11 "are warranted 'only in the "exceptional circumstances" where a claim or motion is patently unmeritorious or frivolous.'" Goldenberg v. Indel, Inc., No. 09-5203, 2011 U.S. Dist. LEXIS 31851, at *5-6 (D.N.J. Mar. 25, 2011) (quoting Watson v. City of Salem, 934 F. Supp. 643, 662 (D.N.J. 1995)). Courts assessing whether to impose sanctions under Rule 11 must apply an objective standard of "reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prods. Inc., 930 F.2d 277, 289 (3d Cir. 1991).

Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." Id. "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); see also Reardon v. Murphy, Civ. A. No. 1811372, 2019 U.S. Dist. LEXIS 166213, at *10 (D.N.J. Sept. 27, 2019) (same). Accordingly, the Third Circuit has recognized that Rule 11 sanctions should only be imposed in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[ ] of the legal system." Goldenberg, 2011 U.S. Dist. LEXIS 31851 at * 6 (quoting Doering, 857 F.2d at 194).

11

III. **Analysis**

    A. Motion to Dismiss

        1. Federal Claims

Defendants seek dismissal of all civil rights claims contained within Count One through Seven of Plaintiff's Complaint on the bases of: failure to plead proximate cause under Title 42, United States Code, Section 1983, i.e., that Plaintiff ever actually contracted, tested positive for, or died from Covid-19; and that none of the defendants were acting under color of state law with regard to Andujar's request to leave work early.  (ECF No. 10-3 at 6-7.)

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Specifically, Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Section 1983 is not itself the source of any substantive rights but rather requires an additional claim of an underlying plausible constitutional tort.  Graham v. Connor, 490 U.S. 386,

393-94 (1989); see also Demby v. City of Camden, 1:20-cv-13893, 2022 U.S. Dist. LEXIS 171428, at *6 n.2 (D.N.J. Sept. 22, 2022)(same).

Whether an individual was acting under color of state law at any given time, is assessed under the following rubric:

> "[A]ction under state law must be addressed after considering the totality of the circumstances and cannot be limited to a single factual question." Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 607 (3d Cir. 2011). However, "the traditional definition of action under color of state law ... requires that one liable under § 1983 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).  Additionally, while "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law," it is also true that "acts of a state or local employee in [his] official capacity will generally be found to have occurred under color of state law ... whether the complained of conduct was in furtherance of the state's goals or constituted an abuse of official power." Barna v. City of Perth Amboy, 42 F.3d 809, 815-16 (3d Cir. 1994) (citations omitted).  The Third Circuit has held that "a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of his official duties does not act under color of law." Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997) (emphasis added).

Aguilar v. Moyer, Civil No. 3:21-CV-595, 2021 U.S. Dist. LEXIS 234511, at *11-12 (M.D. Pa. Dec. 7, 2021); see also Estate of Conroy v. Balicki, Civil Action No. 17-7183, 2018 U.S. Dist. LEXIS 90720, at *4 (D.N.J. May 31, 2018) ("The traditional

definition of acting under color of state law requires that the
defendant in a § 1983 action have exercised power possessed by
virtue of state law and made possible only because the wrongdoer
is clothed with the authority of state law.") (cleaned up).

In this case, Defendants' second line of defense – namely
that they were not acting under the authority of state law – is
almost as frivolous as they contend Plaintiff's claims are.
Plaintiff's Complaint clearly alleges that while on duty as a
county correctional officer at a county-run jail, his
supervisors, who were also county employees, denied his request
"to obtain immediate medical attention or use collectively
bargained sick leave time to end his shift early and seek
medical attention on his own[,]" despite Andujar conveying to
them his subjective feelings of illness and despite displaying
objective symptoms.  (Compl. ¶¶ 14, 16.)  It should go without
saying that if Plaintiff had indeed left his place of employment
without authority, he would have subjected himself to discharge
from his county position or a disciplinary hearing for
insubordination.  It is hard to imagine a situation more imbued
with the exercise of official authority.

Accordingly, Defendants' argument that the allegations are
no more than a dispute over employment conditions akin to those
common in the private sector, does nothing to strip Defendants
of their status as public officials discharging their official

14

duties and Defendants cite no authority to the contrary.  <u>See</u> <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 816 (3d Cir. 1994) ("[A]cts of a state or local employee in her official capacity will generally be found to have occurred under color of state law . . . This will be so whether the complained of conduct was in furtherance of the state's goals or constituted an abuse of official power.")

However, Defendants' primary argument – that Plaintiff has failed to allege facts sufficient to constitute a plausible claim that the conduct of the Defendants was the proximate cause of a cognizable injury – has merit.  That failure, coupled with other pleading defects in certain counts, render each of Plaintiff's federal claims defective and readily dismissible. Each of Plaintiff's federal claims are addressed in turn.

### a. 1st Amendment Retaliation

In the First Count of Plaintiff's Complaint, it is alleged Defendants violated Andujar's First Amendment right to free speech when they denied his request to leave work early and did not provide medical attention after he had "subjective feelings of illness as well as [ ] objective demonstrations of illness[.]".  (Compl. ¶¶ 14, 16-17.)  Plaintiff claims that during the time Andujar felt sick on January 22, 2021, he "promptly and repeatedly brought his concerns about his health and its interplay with policies, procedure, rules, regulations,

and other information concerning the operation of the Cumberland
County Correction Institution in light of the global pandemic"
but was "implicitly and explicitly discouraged from raising the
issues[.]" (Compl. ¶¶ 17-18.)  Defendants seek dismissal of this
Count, arguing Plaintiff's Complaint is devoid of any allegation
of protected speech or retaliatory action.  (ECF No. 10-3 at 9-
10.)

   "Actionable retaliation for the exercise of First Amendment
rights requires Plaintiff to establish (1) that the conduct in
which Plaintiffs engaged was constitutionally protected, and (2)
that it was a substantial or motivating factor for the alleged
retaliatory conduct by Defendants."  Ferraioli v. City of
Hackensack Police Dep't, No. CIV. A. 09-2663, 2010 U.S. Dist.
LEXIS 8527, at *27-28 (D.N.J. Feb. 2, 2010) (citing Baldassare
v. State of N.J., 250 F.3d 188, 194-95 (3d Cir. 2001)).
Critically, "[t]he First Amendment protects speech by a
government employee only when it relates to a matter of public
concern." Id. at *28.  Also salient to the analysis is whether
the employee was speaking in the scope of their employment or as
a private citizen.

   The linchpin in this analysis is "whether the speech at
issue is itself ordinarily within the scope of an employee's
duties, not whether it merely concerns those duties." Lane v.
Franks, 573 U.S. 228, 240 (2014).  "[W]hen public employees make

16

statements pursuant to their official duties, the employees are
not speaking as citizens for First Amendment purposes, and the
Constitution does not insulate their communications from
employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421
(2006). "[P]ublic speech cannot constitute merely personal
grievances." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003)
(cleaned up).

Here, Plaintiff's Complaint is unclear as to exactly what
"speech" is being relied upon in support of its First Amendment
claim. Andujar's conveyance to his supervisors of how he felt
physically on January 22, 2021 cannot be deemed
"constitutionally protected speech." (Compl. ¶ 14.) Such a
declaration, while certainly "concerning" his official duties in
the sense he sought to go home, was also wholly personal in
nature. However, Plaintiff additionally alleges (in pertinent
part) that correctional officers:

> [W]ere being forced to use their own banked vacation
> time, their own banked sick time, and their own banked
> administrative time when being forced to quarantine by
> order of physicians or supervisors due to possible
> exposure to Covid-19 on the job leading to the
> depletion of accumulated banks of vacation time, sick
> time, and administrative time thereby exposing the
> officer to discipline for abuse of vacation time, sick
> time, and administrative time upon complete depletion.
> By being exposed to potential discipline for abuse of
> vacation time, sick time, and administrative time,
> members of PBA Local 231 were without banked time to
> use at their convenience to tend to their families
> during this global pandemic.

17

(Compl. ¶ 12(c).)

Accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to Plaintiff as this Court must, Plaintiff's statements regarding the prison's Covid-19 sick leave and overall Covid-19 policies qualify as public speech.  Plaintiff's alleged advocacy for a safe working environment for staff as well as inmates, both individually and as a member of his union, has a sufficient nexus to a matter of public concern to be worthy of First Amendment protection.

However, while the court finds a plausible allegation of protected speech, Court One is nevertheless defective because it fails to allege facts setting out a sufficient connection between that speech and Plaintiff's injury.  More specifically, the Complaint fails to sufficiently plead that Andujar's alleged act of voicing "his concerns about his health and its interplay with policies, procedures, rules, regulations, and other information concerning the operation of the Cumberland County Correctional Institution in light of the global pandemic" (Compl. ¶ 17) was the cause or reason his supervisors denied his requests for medical attention or leave.  To allege that Plaintiff was denied leave under the policy he had previously complained of is not the same as alleging he was denied leave because of his complaints on a matter of public concern.

18

Moreover, the Complaint provides no details whatsoever about Andujar's death and the reason for it, nor is there any indication in Plaintiff's Complaint that the denial of Andujar's request to use sick leave contributed to, aggravated, or otherwise caused his death later that day.

To be clear, as it relates to Count One, there is no need for Plaintiff to allege Andujar died of Covid-19. Andujar could have died of a heart attack that evening and if his denial of sick leave that day was motivated to punish him for protected speech or to chill such speech and such delay in treatment caused him injury, Count One would state a plausible claim.

But whatever caused Plaintiff's demise, Count One fails to allege any facts to show a causal connection between the expression of protected speech and his injury. Having failed to sufficiently plead causation, the First Count fails and dismissal is warranted.[3]

---

[3] While a pleading may not be amended by statements made in a brief, the Court notes that at best, Plaintiff's theory of causation has shifted since the Complaint was filed. Plaintiff's brief in opposition to the motion to dismiss appears to argue that Andujar was denied leave not as an act of retaliation for protected speech but because the jail was so poorly staffed guards were compelled to work against their will because of chronic understaffing and mandatory overtime. (ECF 15 at pg. 14-25.)

b.  8th & 14th Amendment Claims for Cruel and
Unusual Punishment and State Created Danger

Defendants next seek dismissal of Plaintiff's Eighth and
Fourteenth Amendment claims, as contained in the Second and
Third Counts of the Complaint.  With respect to the Eighth
Amendment, Defendants argue Andujar "was not an inmate, nor
. . . subjected to any form of punishment, certainly not cruel
and unusual punishment." (ECF No. 10-3 at 10.)  In response,
Plaintiff argues that under the circumstances, Andujar could "be
considered a *de facto* inmate of the Facility[.]"  (ECF No. 15 at
27.)  However, Plaintiff provides no case law to support this
novel contention, nor has this Court found any.

The Supreme Court has characterized the Eighth Amendment[4]
as "prohibit[ing] punishments which, although not physically
barbarous, involve the unnecessary and wanton infliction of
pain, or are grossly disproportionate to the severity of the
crime. Among unnecessary and wanton inflictions of pain are
those that are totally without penological justification."
Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (internal quotation
marks and citations omitted).  In this case, Andujar was a

---

[4] The protections of the Eighth Amendment apply to convicted
prisoners.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).
Pretrial detainees are protected by the Fourteenth Amendment,
which provides protections "at least as great as the Eighth
Amendment[.]"  Natale v. Camden Cty. Corr. Facility, 318 F.3d
575, 581 (3d Cir. 2003) (quoting City of Revere v. Massachusetts
Gen. Hosp., 463 U.S. 239, 244(1983)).

corrections officer — not a prisoner.  As such, he was not entitled to the claimed Eighth Amendment protection.

Moreover, Count Two suffers from the same causation defect as Count One.  As discussed above, even if Plaintiff were somehow entitled to Eighth Amendment protection, the Complaint is devoid of any indication that a purported "detention" on January 22, 2021 contributed to, aggravated, or caused Andujar's death later that day.

With respect to the Fourteenth Amendment, the Third Count of Plaintiff's Complaint alleges a state created danger. (Compl. ¶¶ 34-43.)  Defendants seek dismissal of that Count, arguing "[t]he Complaint does not allege Defendant(s) used state authority to limit Andujar's ability to act on his own behalf." (ECF No. 10-3 at 12.)  While that argument is only partly persuasive in the sense that Andujar – unlike the prisoners he guarded – could have engaged in self-help by simply abandoning his post and going home or to the doctor if he was willing to face the employment consequences, this Court need not resolve this issue, as Count Three is dismissible on other grounds.

To assert a claim under the state-created danger doctrine, a plaintiff must prove: (1) that the harm was "foreseeable and fairly direct," (2) the "state actor acted with a degree of culpability that shocks the conscience," (3) the plaintiff was not merely a member of the general public, but rather a

relationship existed between the state and the plaintiff that
made the plaintiff a "foreseeable victim" or a member of a
discrete class of individuals subjected to the potential harm
caused by the state's action, and (4) "a state actor
affirmatively used his or her authority in a way that created
danger to the citizen or that rendered the citizen "more
vulnerable to danger than had the state not acted at all."
Brown v. Sch. Dist. of Phila., 456 F. App'x 88, 91 (3d Cir.
2011) (citing Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir.
2006)).  Importantly, the Court of Appeals for the Third Circuit
has noted that "negligent behavior can never rise to the level
of conscience shocking." Kaucher v. County of Bucks, 455 F.3d
418, 426 (3d Cir. 2006)(citing County of Sacramento v. Lewis,
523 U.S. 833, 849 (1998)).  In this case, Plaintiff has failed
to allege sufficient facts to make out two of four elements
outlined above.[5]

As a preliminary matter, it is clear from the Complaint
that Count Three is premised entirely on the theory that
Cumberland County failed to formulate, implement, and enforce a

---

[5]  This Court assumes without holding that Andujar, as an
employee within the jail itself, could be said to be a
foreseeable victim if he were protected by the state created
danger doctrine and similarly that Defendants' denial of
Andujar's request to leave work early constituted an affirmative
use of their authority that created, or made Andujar more
vulnerable to, danger if the other elements could be met.

comprehensive and effective Covid-19 policy meeting basic constitutional requirements applicable to a government facility housing pre-trial detainees and that such a failure had a negative impact on the staff who worked there.  This Court accepts that factual and legal premise.  But that alone does not show that Mr. Andujar, a prison guard, either suffered harm as a result of that failure or was otherwise a person whose interests in such a situation are protected by the Constitution.

More specifically, as to the first element, Plaintiff must show that the harm he suffered was "foreseeable and fairly direct."  Here, the foreseeable harm from the lack of an effective and appropriate Covid-19 policy is an excessive, unreasonable, or unwarranted risk beyond the ordinary risk of contracting a preventable and potentially deadly disease.  It is here that Plaintiff's unwillingness or inability to allege that he died of Covid-19 or suffered worse symptoms for lack of immediate medical care (or perhaps suffered for fear of contracting it), defeats the asserted claim.  Absent a connection between the reasonably foreseeable harm – that in the absence of an effective policy that Covid-19 would spread like wildfire through the Cumberland County Jail infecting inmates and staff alike - and the harm that Plaintiff suffered (the cause of his death or suffering), Plaintiff cannot prove the first element.

Plaintiff fares no better on the second element – that the state acted with a degree of culpability that shocks the conscience.  Putting aside the constitutional obligations the County may have owed to its pretrial detainees and whether the County's practices shock the conscious as it relates to them, even the extraordinary events of a worldwide deadly pandemic do not alter the fundamental nature of the relationship between Andujar and Defendants - that is, one of employee and employer. Even assuming that prison staff and prison guards are within the zone of persons protected by a jail's rational and effective Covid-19 policy which presumably protects all who work in, are housed in, or visit that facility, the Third Circuit Court of Appeals has held in an analogous situation that a prison guard has no constitutional right to be free from the risks of contracting and infectious decease or an otherwise safe working environment within the four walls of a jail.  Kaucher v. County of Bucks, 455 F.3d 418, 424 (3d Cir. 2006)("[T]he Constitution does not guarantee public employees a safe working environment.") (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129 (1992)).

In Kaucher, the Third Circuit rejected a state created danger argument brought by a corrections officer and his wife who contracted staph infections, finding Collins precluded such a claim based on a prison's "fail[ure] to provide a safe working

24

environment at the jail, free from risk of infection." Kaucher,
455 F.3d at 424.  The same is true here.  Jails are dangerous
places and whatever duties the municipality may owe to those
held against their will, those duties do not necessarily apply
to other persons who are there for voluntary reasons and whose
relationships are governed by other protections and legal
standards.

Moreover, even if Kaucher did not foreclose Plaintiff's
Fourteenth Amendment claim and Andujar was afforded some level
of constitutional protection, no facts alleged could be said to
amount to the level of unconscionable conduct.  As noted
previously, the Complaint is devoid of any facts regarding the
cause of Andujar's death.  Nor are there any allegations in
Plaintiff's Complaint to indicate that Defendants' denial of
Andujar's request to leave early on January 22, 2021 contributed
to, aggravated, or caused his death later that day.  Similarly,
there are no facts to indicate Andujar appeared so ill as to
render it foreseeable that had he not been given permission to
leave, he would die.  Plaintiff's allegations of "subjective"
and "objective" signs of illness (Compl. ¶¶ 13-15) may
constitute negligence or even recklessness but they are not of
the kind that "shock the conscience" within the scope of the
tort of a state created danger.  See id. at 426 ("negligent
behavior can never rise to the level of conscience shocking")

(citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849

(1998)).  Accordingly, Defendants' Motion will be granted as to

the Second and Third Counts of Plaintiff's Complaint.[6]

### c. 4th Amendment Unreasonable Seizure

The Fourth Count of Plaintiff's Complaint alleges in

pertinent part that Defendants violated 42 U.S.C. § 1983 via an

"unreasonable seizure in violation of the Fourth Amendment" when

they "denied permission to leave the Cumberland County

Correctional Facility in order to seek immediate medical

treatment[.]"  (Compl. ¶¶ 44-46.)  Defendants seek dismissal of

this Count, arguing "[t]he Complaint does not allege Andujar was

seized under any definition of the word seizure."  (ECF No 10-3

at 13.)

The Fourth Amendment is applicable to the States through

the Fourteenth Amendment. <u>Baker v. McCollan</u>, 443 U.S. 137, 142

(1979).  The Fourth Amendment guarantees "[t]he right of the

people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures." U.S.

---

[6]  To the extent Plaintiff in his opposition brief alleges new
facts to support these claims, the court declines to consider
them in this procedural posture.  A complaint may not be amended
via an opposition brief to a motion to dismiss.  <u>Com. of Pa. ex
rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir.
1988); <u>see</u> <u>also</u> <u>Hamza v. United Cont'l Holdings, LLC</u>, Civil
Action No. 19-8971, 2020 U.S. Dist. LEXIS 177853, at *7 (D.N.J.
Sept. 28, 2020) ("It is well established that a plaintiff may
not amend his complaint in a brief in opposition [to] a motion
to dismiss.").

Const. amend. IV.  The elements of a § 1983 claim for
unreasonable seizure are: (1) actions of the state actors that
constituted a seizure within the meaning of the Fourth
Amendment; and (2) the actions were unreasonable in light of the
surrounding circumstances. Brower v. County of Inyo, 489 U.S.
593, 597-99 (1989). A "'seizure' alone is not enough for § 1983
liability; the seizure must be 'unreasonable.'"  Id. at 599.

          To that end,

> It is clear . . . that a Fourth Amendment seizure does
> not occur whenever there is a governmentally caused
> termination of an individual's freedom of movement
> . . . nor even whenever there is a governmentally
> caused and governmentally desired termination of an
> individual's freedom of movement . . . but only when
> there is a governmental termination of freedom of
> movement through means intentionally applied.

Brower, 489 U.S. at 596-97.

          In this case, Plaintiff alleges Andujar "became an
individual unreasonably seized[.]"  (Compl. ¶ 45; ECF No. 15 at
33.)  However, as noted above, "a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of
a cause of action's elements will not do."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citation omitted).  Andujar was free to leave the prison on
January 22, 2021, regardless of whether sick leave would be
granted for the absence.  He was not "detained" for purposes of

the Fourth Amendment.  Further, as before, Plaintiff alleges no

facts to indicate that Andujar's completion of a full shift on

January 22, 2021 had any effect on his illness . . . whatever

that illness might have been.  In other words, the Complaint

contains no facts to show that serving his full shift

aggravated, contributed to, or caused Andujar's death later that

day.  Therefore, even assuming Andujar suffered an unlawful

seizure as defined by the Fourteenth Amendment, Plaintiff fails

to allege any factual connection between that detention and any

harm suffered by Andujar.  Accordingly, Defendants' Motion to

Dismiss this claim will be granted.[7]

### d.  42 U.S.C. § 1983

The Seventh Count of Plaintiff's Complaint contains a cause

of action against Defendant County of Cumberland for Failure to

Train under 42 U.S.C. § 1983.  (Compl. ¶¶ 58-63.)  In presenting

this claim, Plaintiff relies upon Berg v. County of Allegheny,

219 F.3d 261 (3d. Cir. 2000)[8] in an attempt to classify it as

something other than a Monell claim but fails to identify in

exactly what regard.  (Compl. ¶ 63.)  Nevertheless, Defendants

---

[7]  To the extent Plaintiff is again attempting to supplement this
claim via the "minimum staffing and mandatory overtime"
language, he may not do so for the reasons set forth in the
preceding footnote.

[8]  Plaintiff's Complaint incorrectly cites Berg at 219 F.3d 362
(3d Cir. 2000).  The correct citation is 219 F.3d 261 (3d Cir.
2000).  (Compl. ¶ 63.)

seek dismissal claiming that even "assuming . . . Plaintiff has
sufficiently pled a Defendant acted under color of law, that
there was an underlying constitutional violation, and Defendants
Smith and Warren are not entitled to qualified immunity,
Plaintiff has failed to plead Cumberland County caused the
constitutional violation."  (ECF No. 10-3 at 17.)

As discussed above, in order to state a plausible claim for
relief under § 1983, a plaintiff must first allege a violation
of a right secured by the Constitution or laws of the United
States. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v.
Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Therefore,
"[t]he first step in evaluating a [S]ection 1983 claim is to
identify the exact contours of the underlying right said to have
been violated and to determine whether the plaintiff has alleged
a deprivation of a constitutional right at all."  Kaucher v.
County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

In this case, the Administrators of Andujar's estate allege
the County was responsible for the "supervision, control,
instruction, training and/or hiring" of Defendants Smith and
Warren, and that the County was "deliberately indifferent to the
constitutional rights of [Luis Andujar]" by failing to "equip
[Smith and Warren] with the specific tools necessary to manage
recurring and predictable situations such as the one involving
[Luis Andujar]."  (Compl. ¶¶ 59-60.)  As a result thereof,

Plaintiff alleges Andujar suffered various physical and mental damages.  (Compl. ¶ 61.)  Again, as set forth more extensively above, Plaintiff's Complaint fails to adequately plead the deprivation of any constitutional right owed to Andujar.

To the extent Plaintiff relies upon Berg, the Third Circuit's holding in that matter do not help Plaintiff establish a claim, as Berg itself specifically reiterated that "[a] showing of simple or even heightened negligence will not suffice [for municipal liability under § 1983]" and "[f]ailure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  Berg, 219 F.3d at 276 (cleaned up).  Here, Plaintiff lacks standing to assert claims of constitutional violations suffered by inmates and has failed to allege facts sufficient to show that Andujar suffered a violation of his constitutional rights.  Absent a plausible violation of his constitutional rights, no municipality liability may arise as to Plaintiff's claims. Smith v. Gransden, 553 F. App'x 173, 178 (3d Cir. 2014); see also Reiff v. Marks, 511 F. App'x 220, 222-23 (3d Cir. 2013) (same).  Since Plaintiff's Complaint is devoid of any facts to establish municipal liability as discussed in Berg or in any other context under § 1983, Defendants' Motion to Dismiss shall be granted as

to the § 1983 Municipal Liability claim as set forth in the Seventh Count of Plaintiff's Complaint.

### 2. State Claims

Plaintiff raises seven Counts based upon New Jersey State law: Violations of New Jersey's Constitutional Right to Enjoy Life and Liberty and New Jersey's Civil Rights Act (Fifth Count); New Jersey's Constitutional Right to Pursue Safety and Happiness and New Jersey's Civil Rights Act (Sixth Count); Failure to Accommodate Under New Jersey's Law Against Discrimination (Eighth Count); Tort of Outrage (Ninth Count); Tort of Gross Insult (Tenth Count); Wrongful Death (Eleventh Count); and, Survival Action (Twelfth Count).  In addition to the foregoing, Plaintiff raises hybrid federal/state claims under the New Jersey State Constitution for Freedom of Expression, Cruel and Unusual Punishment and Unreasonable Seizure (First, Second and Fourth Counts); and, Failure to Train under New Jersey's Civil Rights Act (Seventh Count).

Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other claims that are related to the action in that the other claims form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (same).  Title 28 U.S.C. § 1367 additionally provides

31

under subsection (c)(3) that district courts "may decline to
exercise supplemental jurisdiction . . . if . . . the district
court has dismissed all claims over which it has original
jurisdiction." 28 U.S.C. § 1367(c)(3); see also Kach v. Hose,
589 F.3d 626, 650 (3d Cir. 2009) (same).  However, in this
Circuit, "where the claim over which the district court has
original jurisdiction is dismissed before trial, the district
court must decline to decide the pendent state law claims unless
considerations of judicial economy, convenience, and fairness to
the parties provide an affirmative justification for doing so."
Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in
original). "Additionally, the federal court should be guided by
the goal of avoiding needless decisions of state law . . . both
as a matter of comity and to promote justice between the
parties." Gibbs, 383 U.S. at 726.

Unless and until Plaintiff provides this Court with at
least one plausibly sustainable federal claim, the court shall
defer any decision regarding Plaintiff's state-based claims.

### 3. Amendment

Federal Rule of Civil Procedure 15(a)(2) provides that "a
party may amend its pleading . . . with the opposing party's
written consent or the court's leave."  Leave to amend is to be
freely granted unless there is a reason for denial, "such as
undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by
virtue of allowance of the amendment, futility of amendment,
etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Arthur
v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors
that may justify denial of leave to amend are undue delay, bad
faith, and futility.").

In this case, Plaintiff does seek leave to amend in the
event this Court finds its claims deficient.  (ECF No. 15 at
46.)  Defendants oppose the granting of any such leave on the
basis of futility.  (ECF No. 19 at 12.)  While dismissal of the
current Complaint is clearly justified and the hurdles to
successfully plead one of more federal claims are unlikely to be
overcome, the court is not prepared to bar amendment based on
futility.  Plaintiff's Complaint is notable not so much for what
if alleges but what it fails to allege.  Given the unprecedented
events of a global pandemic, the well-documented problems at the
Cumberland County Jail, and the *sui generis* nature of
Plaintiff's claims, this Court is not prepared to hold that
Plaintiff may plead no facts that might support a plausible
violation of Andujar's constitutional rights, as unlikely as
that seems on the current record.  Accordingly, consistent with
long-standing Third Circuit precedent, leave to amend will be

granted with the understanding that Plaintiff will note well the deficiencies in the current Complaint, as discussed above.

### B. Motion for Sanctions

In addition to dismissal of Plaintiff's claims, Defendants seek sanctions, claiming Plaintiff was notified on December 13, 2022 that the facts contained within its Complaint were belied by prison documentation regarding Andujar's illness, decisions regarding the denial of sick leave, and the last day of employment at the prison before his death. (ECF No. 16-3 at 5-6. Ex. 1.)  In Defendants' December 13, 2022 letter to Plaintiff, Defendants demanded that in accordance with Fed.R.Civ.P. 11, Plaintiff withdraw all claims against them within ten days. (ECF No. 16-3 at 6, Ex. 1.)

In response to Defendants' Motion for Sanctions, Plaintiff argues it should be denied because: (1) Defendants filed their Motion to Dismiss four days prior to serving the December 12, 2022 letter upon Plaintiff's counsel; (2) no Orders regarding a Rule 16 Conference or date within which to amend have been issued yet; and (3) the documents relied upon by Defendants have not been certified as accurate or complete, therefore Plaintiff should have an opportunity to investigate them. (ECF No. 18 at 4-5.)

Plaintiff does not contest the fact that it received notice of dispositive factual discrepancies prior to filing its

Opposition to Defendants' Motion to Dismiss.  In fact, Plaintiff
had ten days within which to ascertain the veracity of the
documents relied upon by Defendants yet has given this Court no
indication that it ever attempted to do so.  As discussed above,
reasonableness in the context of a Rule 11 inquiry has been
defined as "an objective knowledge or belief at the time of the
filing of a challenged paper that the claim was well grounded in
law and fact."  Ford Motor Co., 930 F.2d at 289.

At first glance, Defendants' sanctions motion is more than
colorable.  If only some of the facts alleged in the motion are
true, a serious issue is raised as to whether Plaintiff's
counsel took the appropriate measures to "stop, look, and
listen" as to the factual allegations in the Complaint.  And the
court has already set forth in detail the lack of a viable
federal claim.

On the record, however, the court will decline to impose
sanctions at this time for several reasons.  First, our Court of
Appeals has made clear that Rule 11 sanctions should be awarded
in only the most extraordinary circumstances.  Here, it is
obvious from the nature of the claims that the most reliable
source of information about the events leading to his death –
Andujar himself - is no longer with us to recount those facts
(ECF No. 18-1 at ¶ 11).  Moreover, it appears counsel for
Plaintiff endeavored in good faith to learn information from

35

third parties, including family members. (ECF No. 18-1 at ¶¶ 15-17.)

While one can presume Plaintiff's counsel would have been privy to Andujar's personal medical records, a portion of the records Defendants rely on for their motion – his employment records – would not have clearly been available to Plaintiff pre-suit.  The Court is also mindful, as noted, of the unusual circumstances of a pandemic, a public institution roiled by various challenges, and a contentious labor dispute centered on the jail's woefully inadequate Covid-19 policy and overall medical staffing and procedures.  Moreover, as doubtful as a viable federal constitutional claim may seem at this stage, the court has erred on the side of allowing amendment, as is common in cases alleging violations of our cherished civil rights.

This is not to say that Plaintiff may repeat these mistakes.  Having now been informed of the possibility, even likelihood, that fundamental facts asserted in the Complaint are simply wrong, this Court will carefully and thoroughly scrutinize any renewed motion to dismiss and motion for sanctions if any Amended Complaint suffers from the same factual and legal defects as the first.

## CONCLUSION

Plaintiff's attempt to recast what appears to be a personal labor and employment dispute between Andujar and his government employer into a claim of constitutional dimension akin to the rights afforded those he had the responsibility of guarding, fails in its first iteration.  Accordingly, and for the reasons set forth above, the court will grant Defendants' Motion to Dismiss as to Plaintiff's federal claims but grant Plaintiff leave to file an Amended Complaint within 30 days if Plaintiff may do so consistent with Federal Rule of Civil Procedure 11. If Plaintiff elects not to file an Amended Complaint, the state law claims will be dismissed without prejudice.  Defendants' motion for sanctions will be denied on the current record.

An appropriate Order will accompany this Opinion.


Dated:   7/27/23                        /s/  Noel L. Hillman
Camden, New Jersey                      Noel L. Hillman, U.S.D.J.